```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA          :

          -v-                     :     07 Cr. 564 (DLC)

ISMAEL ROQUE,                     :

                                  :
          Defendant.
                                  :

- - - - - - - - - - - - - - - - - X
```

**GOVERNMENT'S SENTENCING MEMORANDUM**



U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

---

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

May 2, 2008

BY HAND DELIVERY

The Honorable Denise L. Cote
United States District Judge
Southern District of New York
500 Pearl Street, Room 1040
New York, New York 10007

   Re: **United States v. Ismael Roque**
      07 Cr. 564 (DLC)

Dear Judge Cote:

  The Government respectfully submits this letter in advance of the sentencing in this case, scheduled for May 9, 2008. For the reasons stated below, the Government submits that a sentence within the range of 37 to 46 months' imprisonment set forth in the United States Sentencing Guidelines (the "Guidelines") and agreed to by the parties is appropriate and should be imposed here.

  On December 12, 2007, Roque pled guilty to conspiring to commit money laundering, in violation of Title 18, United States Code, Section 1956(h). While Roque acknowledged during his allocution that he knew that the $528,891 in cash recovered from the car he and co-defendant Victor Perez were driving were the proceeds of illegal activity, it is clear from Perez's post-arrest statement and phone calls received by a cooperating witness ("CW") that this was not the first time Roque had transported narcotics proceeds.

  Following his arrest, and after being advised of and waiving his <u>Miranda</u> rights, Perez informed the arresting agents that, for approximately three years, he (Perez) picked up and dropped off narcotics proceeds for Toni Gonzalez, a drug dealer in Connecticut, and that Roque also transported narcotics proceeds for Gonzalez. Perez's statement also revealed that on November 10, 2006, the day of the money seizure, Roque asked Perez to drive him into Manhattan from a truck stop in New Jersey. According to Perez, it was Roque who coordinated the pick-up of the two individuals who brought the bags of cash into the car. It was also Roque, stated Perez, who called an unknown male on a Nextel direct-connect phone after Roque and Perez realized they were being followed and asked if a car had been sent to follow them. In response, the unknown male told Roque that he would call the individuals who dropped off the money. <u>See</u> Pre-Sentence Report ("PSR") at ¶ 20.

On November 10, 2006, shortly after agents with the Bureau of Customs and Immigration Enforcement ("ICE") pulled over Roque and Perez and seized the cash, the CW received several phone calls from an unnamed co-conspirator ("CC-1") who is based in Mexico and with whom the CW has spoken in the past about the importation and distribution of kilogram quantities of cocaine. During one of the calls, CC-1 told the CW that he had heard from "the boys" and that they believed they were being followed by the police. CC-1 also described the make and color of the car being followed (a "dark colored Durango"), which matched the make and color of the car driven by Roque and Perez. CC-1 later advised the CW that "the boys" had been "detained," and there has not been "any more communication." Id. at ¶¶ 17-19.

The timing and the content of Roque's calls (as described by Perez) and CC-1's calls (as described by the CW) reveals that the unknown male Roque was talking to while driving with Perez was either CC-1 himself or a close associate of CC-1's who was able to provide information to CC-1 immediately. As noted above, CC-1 is a Mexican-based cocaine trafficker who discussed with the CW the delivery of kilogram quantities of cocaine from Mexico to the United States. Accordingly, the evidence suggests that Roque, a self-described "off the books" cross-country truck driver, had been tasked by CC-1's organization to pick up the $528,891 in narcotics proceeds in Manhattan, load it into his truck in New Jersey, and transport it across the country or possibly over the border to Mexico.

The parties and the Probation Office agree that the correct Guidelines range is 37 to 46 months' imprisonment because Roque has a total offense level of 21 and is in Criminal History Category I. The total offense level is the result of a base offense level of 22 (because the value of the laundered funds is more than $400,000 but less than $1 million), a two level enhancement because Roque was convicted under 18 U.S.C. § 1956, and a three level reduction for acceptance of responsibility. See PSR at ¶¶ 26-39.

The Government respectfully submits that a sentence within the applicable Guidelines range of 37 to 46 months is appropriate and should be imposed in this case. By agreeing to transport more than a half million dollars in narcotics proceeds for a drug trafficking organization, Roque's criminal conduct was serious. Moreover, his actions were the product of considerable planning and deliberation. On November 10, 2006, after calling Perez, Roque was picked up by Perez in New Jersey and then they drove to Manhattan to pick up two other individuals who supplied the bags containing more than $500,000 in cash. After receiving the cash, Roque and Perez dropped off the other individuals, then drove back to New Jersey before they later returned to Manhattan and were stopped by the police. During this period, Roque suspected that he and Perez were being followed and he called CC-1 or an associate of CC-1's to find out more information.

Finally, Perez's post-arrest statement reveals that this is not the first time Roque has engaged in this type of behavior. The fact that Roque was entrusted with more than a half million dollars in narcotics proceeds supports Perez's information. As a result, Roque cannot reasonably claim that he was a novice to the field of money laundering or that the instant case

constitutes aberrant behavior.

    For all of these reasons, the Government respectfully requests that the Court impose a sentence within the 37 to 46 month range provided by the Guidelines.

                                            Respectfully submitted,

                                            MICHAEL J. GARCIA
                                            United States Attorney

                           By: _____
                                           Brendan R. McGuire
                                           Assistant United States Attorney
                                           (212) 637-2220

cc:    George R. Goltzer, Esq. (by fax)
        Counsel for Ismael Roque

        Ross N. Kapitansky
        U.S. Probation